1  TODD D. THIBODO (State Bar No. 171655) todd@thibodo.com
   ANKUR TARNEJA (State Bar No. 262593) ankur@thibodo.com
2  LAW OFFICES OF TODD D. THIBODO
   A PROFESSIONAL CORPORATION
3  16133 Ventura Boulevard, Suite 580
   Encino, California 91436
4  Tel: (818) 907-5769
   Fax: (818) 907-5793
5
   Attorneys for Plaintiffs
6  DAVID PERDUE and LIZZETTE PERDUE

```
FILED
CLERK, U.S. DISTRICT COURT

JUN 1 7 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY
```

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11 DAVID PERDUE and LIZZETTE          CV13-  4351 CH
   PERDUE,                            CASE NO.
12
              Plaintiffs,             COMPLAINT FOR:
13
          vs.                         (1) 42 U.S.C. § 1983 (Excessive Force);
14                                    (2) 42 U.S.C. § 1983 (False Arrest);
   CITY OF TORRANCE; TORRANCE         (3) 42 U.S.C. § 1983 (*Monell* Liability);
15 POLICE DEPARTMENT;                 (4) Battery;
   UNKNOWN TORRANCE POLICE            (5) Intentional Infliction of Emotional
16 OFFICER NO. 1, individually and in     Distress; and
   her capacity as a Torrance police  (6) Negligence
17 officer; UNKNOWN TORRANCE
   POLICE OFFICER NO. 2, individually
18 and in his capacity as a Torrance police   DEMAND FOR JURY TRIAL
   officer; and DOES 1 THROUGH 10,
19 inclusive,
20            Defendants.

21

22

23

24      Plaintiffs David and Lizzette Perdue, for their Complaint against defendants

25 City of Torrance, Torrance Police Department, Unknown Torrance Police Officer

26 No. 1, Unknown Torrance Police Officer No. 2, and DOES 1-10 (collectively,

27 "Defendants") allege as follows:

28

COPY

## NATURE OF THE ACTION

On the morning of February 7, 2013, Plaintiff David Perdue ("Plaintiff" or "David") was driving in a black Honda Ridgeline pickup truck on his way to pick up a friend to go surfing before work. As he drove to his friend's house, David drove south on Flagler Lane toward where it turns east and becomes Towers Street. At the turn in the road, he was stopped by two Torrance police officers, who were parked in their patrol car. The officers were on the lookout for Christopher Dorner, a 6'2" 270-pound black man, who was reportedly driving a gray Nissan Titan pickup truck, with a roof rack and oversized tires. David is white, 5'8" and 155 pounds.

The officers questioned David as to his reason for being in the area. David told the officers he was a local resident and he patiently explained that he was picking up a friend to go surfing. He gave the officers his identification, and the officers reviewed it. He explained he would be going to work at LAX later that morning. Once the officers were fully satisfied with David's explanations, they instructed him to turn around and drive back north on Flagler. David turned around and headed back the way he came, as he was instructed. David then saw another Torrance Police Department vehicle come around the corner traveling east on North Beryl Street to south on Flagler. David pulled his vehicle over to the side of the road.

Without any warning, the second Torrance police car accelerated to 25-30 miles per hour, suddenly turned and crashed broadside into David's black Honda Ridgeline, spinning him around and tearing off the rear axle. The airbags and side-curtain airbags in David's vehicle deployed. David's upper body was thrown over the console, toward the passenger seat. One or both of the Torrance police officers inside the second patrol car, defendants Unknown Torrance Police Officer No. 1 and Unknown Torrance Police Officer No. 2, then opened fire from inside their car. They fired at least three bullets into the open driver's side window of David's

1   vehicle.  The bullets went through the side-curtain airbags, past David's head and
2   through the front windshield.  Even though it should have been apparent that David
3   was not a 6'2" 270-pound black man, defendants later claimed they could not
4   actually see who they were shooting at.
5        Within seconds, defendant Unknown Torrance Police Officer No. 1 appeared
6   at David's driver's side door, pointed her gun at David's head, ordered him out of
7   his vehicle, and forced him to lay face-down on the pavement.  Even though it was
8   now very clear that David was not the person they were looking for, the police
9   detained him for an hour.
10
11                          **THE PARTIES**
12        1.    Plaintiff David Perdue is a resident of Los Angeles County.  Prior to
13   February 7, 2013, David was employed as a baggage handler at LAX.   Plaintiff
14   Lizzette Perdue ("Lizzette") is married to David.  David and Lizzette (collectively
15   "Plaintiffs") have been married for seven years and have two children.
16        2.    Defendant City of Torrance ("City") is, and at all relevant times was, a
17   political subdivision of the State of California, with the capacity to sue and be sued.
18   The City acted through its agency, defendant Torrance Police Department.
19        3.    Defendant Torrance Police Department ("Torrance PD") is, and at all
20   relevant times was, an agency organized under the auspices of the City.
21        4.    Defendants Unknown Torrance Police Officer No. 1 and Unknown
22   Torrance Police Officer No. 2 (collectively "Defendant Officers") are and were
23   employed as police officers for the City, whose identities have been concealed by
24   Defendants City and Torrance PD.  Defendant Officers are sued individually and in
25   their official capacities.  In engaging in the conduct alleged in this Complaint,
26   Defendant Officers acted under color of law and in the course and scope of their
27   employment.
28

                                  -3-

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

1    5.    Plaintiffs have no knowledge of the true names of Defendants
2  Unknown Torrance Police Officer No. 1 and Unknown Torrance Police Officer No.
3  2, and therefore sue said Defendants by such fictitious names.  Plaintiffs will amend
4  the complaint to show the true names and capacities of said Unknown Torrance
5  Police Officer No. 1 and Unknown Torrance Police Officer No. 2 when they
6  become known.
7    6.    Plaintiffs have no knowledge of the true names and capacities, whether
8  individuals, corporations, partnerships, joint ventures, sole proprietorships or
9  otherwise, of Defendants DOES 1 through 10, inclusive, and therefore sue said
10  Defendants by such fictitious names.  Plaintiffs will amend their complaint to show
11  the true names and capacities of said DOE Defendants when they become known.
12  Plaintiffs are further informed and believe, and on that basis allege, that each
13  fictitiously named Defendant is responsible in some manner for the occurrences and
14  wrongdoing herein alleged, and that Plaintiffs' damages were proximately caused
15  by each Defendant's acts.
16
17                    **JURISDICTION AND VENUE**
18    7.    This action arises under 42 U.S.C. § 1983.  The Court has jurisdiction
19  over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343.  The
20  Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28
21  U.S.C. § 1367(a).
22    8.    Venue in this judicial district is proper pursuant to 28 U.S.C. §
23  1391(b), as Defendants reside within this judicial district and the acts that form the
24  basis of Plaintiffs' claims occurred in this judicial district.
25    9.    To the extent required, Plaintiffs' have timely complied with all
26  government claim requirements, as set forth in California Government Code §§ 900
27  *et seq.*  Plaintiffs received written rejection of their claims, or their claims have
28  been rejected by operation of law, within six months of the filing of this complaint.

-4-

1

## STATEMENT OF FACTS

2      10.     At the time of the incident, Plaintiff David Perdue was 38 years old,

3   and he lived with his wife, Plaintiff Lizzette Perdue, and their two children in

4   Redondo Beach, California.

5      11.     On the morning of February 7, 2013, David was driving in a black

6   Honda Ridgeline pickup truck on his way to pick up a friend to go surfing before

7   work.  As he drove to his friend's house, David drove south on Flagler Lane toward

8   where it turns east and becomes Towers Street.

9      12.     At the turn in the road, David was stopped by two Torrance police

10   officers, who were parked in their patrol car.  The officers were on the lookout for

11   Christopher Dorner, a 6'2" 270-pound black man, who was reportedly driving a

12   gray Nissan Titan pickup truck, with a roof rack and oversized tires.

13      13.     The officers questioned David about his reason for being in the area.

14   David told the officers he was a local resident and he patiently explained that he

15   was picking up a friend to go surfing.  He showed the officers his surfboards.  He

16   gave the officers his identification, and the officers reviewed it.  He explained he

17   would be going to work at LAX later that morning.

18      14.     Once the officers were fully satisfied with David's explanations, they

19   instructed him to turn around and drive back north on Flagler.  David began to turn

20   around and head back the way he came, as he was instructed.

21      15.     After he turned his vehicle around and was heading back north on

22   Flagler toward Beryl, David then saw another Torrance PD vehicle – Defendant

23   Officers' patrol car – come around the corner traveling east on Beryl Street to south

24   on Flagler.  David began to pull his vehicle over to the side of the road.

25      16.     As Defendant Officers turned south onto Flagler, a recording of police

26   radio traffic that morning captures Unknown Torrance Police Officer No. 2 saying,

27   "we are entering from Beryl, we see a truck in front of us. . . ."

28

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

17.    It is not clear whether the two Torrance police officers who had just told David to turn around ever tried to communicate that this "truck" that Unknown Torrance Police Officer No. 2 saw was not Christopher Dorner's gray Nissan Titan with a roof rack and oversized tires, but was just one of the nearly million other pickup trucks in Los Angeles County.

18.    Without any warning, Defendant Officers accelerated to 25-30 miles per hour, suddenly turned their patrol car and crashed broadside into David's black Honda Ridgeline, spinning him around and tearing off the rear axle.  The airbags and side-curtain airbags in David's vehicle deployed.  David's upper body was thrown over the console, toward the passenger seat.

19.    Apparently still not realizing that the black Honda Ridgeline pickup truck they had just broadsided was not a gray Nissan Titan with a roof rack and oversized tires, one or both Defendant Officers then opened fire from inside their patrol car.  They fired at least three bullets into the open driver's side window of David's vehicle.  The bullets went through the side-curtain airbags, past David's head and through the front windshield.  At the time Defendant Officers fired at David, they claim they had no idea who they were shooting at.

20.    Within seconds, defendant Unknown Torrance Police Officer No. 1 appeared at David's driver's side door, pointed her gun at David's head, ordered him out of his vehicle, and forced him to lay face-down on the pavement.  Even though it was apparent that David was not the person they were looking for, defendants detained him for an hour.

**Defendants refuse to accept responsibility and instead publish false and conflicting accounts of what happened.**

21.    The defendants in this case immediately began disseminating false and inconsistent information about the Perdue shooting.

22.    In a press release issued the same day as the shooting, the Torrance PD claimed, "[a]s Torrance Police Officers responded to the location, they observed a

-6-

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

truck suddenly leaving the area matching a similar description of suspect Christopher Dorner's vehicle." David was driving a black Honda Ridgeline. Dorner's vehicle was a gray Nissan Titan, with a roof rack and oversized tires. The two vehicles are different makes, different models, and different colors. The vehicles were similar only in that they are both pickup trucks, like the more than one million other pickup trucks in Los Angeles County.

23.    On February 11, the Torrance City Attorney claimed that "there is an on-going investigation" that was still in its "infancy." The Torrance City Attorney also claimed that Defendant Officers' attempt to kill someone who they could not see or identify was "clearly . . . reasonable" and "appropriate."

24.    The Torrance City Attorney also claimed that the Torrance PD "never intended to mislead the public." Despite this, Defendant City continued to misstate and omit key facts. As an example, Defendant Torrance PD never publicly acknowledged that seconds before its officers rammed into and shot at David, he had just stopped and spoken with two other Torrance police officers, he had just been told by those officers to turn his vehicle around, he had done exactly that, and he had driven not more than 300 feet when he was rammed and shot at by Defendant Officers.

25.    Defendant City and Torrance PD Chief of Police John Neu ("Neu") also repeatedly stated that David appeared to be "fleeing the scene" and that his vehicle was "traveling toward" the Defendant Officers. They made this statement in their press release and in statements to the media. As reported by the media on February 10, the Torrance PD issued a statement again claiming that David's vehicle was "suddenly leaving the area and seemingly veered into the patrol car." The Torrance PD claimed, "In the split seconds available to them the action was appropriate to intervene and stop the actions of the driver of that vehicle."

26.   Defendants' public statements that David was "suddenly leaving," "fleeing," and was "veering into" the Torrance patrol car were false when Defendants made them.  The true facts are that:

- David's vehicle was either stopped or was moving less than five miles per hour when the Torrance PD officers crashed into him;

- David was not "traveling toward" the Torrance patrol car, but was slowing and moving over to the right side of the street;

- Defendant Officers initiated the impact; and

- Defendant Officers' patrol car was accelerating and doing about 25-30 miles per hour at the time of impact.

27.   Defendants also falsely claimed that Defendant Officers had to make a "split-second decision."  In fact, Defendant Officers had ample time to assess the situation from the time they first turned from Beryl Street onto Flagler Lane until the time they fired shots at David's head.  Every day, ordinary people are able to correctly perceive the environment around them and make decisions based on what they perceive in less time than Defendant Officers had before shooting at David. Defendant Officers are supposed to be trained professionals.  There was no "split second" decision here.

28.   Neu is also quoted as stating that the driver of the patrol car was unable to get out of the car before opening fire "because the crash had damaged it." Photos of the two vehicles after the crash clearly show the driver's side door of the patrol car is open.

29.   David gave a statement at the scene, Defendant Torrance PD interviewed its four officers who were on the scene, and Defendant Torrance PD has had exclusive control of the two vehicles since the incident.  Accordingly, Defendants knew their statements, including their statements that David was "fleeing the scene," "suddenly leaving the area," and "traveling toward" Defendant Officers, were false at the time they made them, or they made the statements in

-8-

1   reckless disregard of the truth.  Despite Defendants' knowledge that their public

2   statements about the shooting were false, they continued to publish false

3   information to the public.

4   **Defendants refuse to provide any answers or information.**

5       30.    In the days after the shooting, Plaintiff requested that the Torrance PD

6   provide the following information:

- Copies of any Dash Cam video and/or audio recordings made at the scene;
- Copies of any audio transmissions or radio traffic immediately before the shooting;
- Data from the Sensing Diagnostic Module or "black box" of the patrol car that broadsided David;
- A copy of any statement that David gave at the scene;
- A copy of any statement that any other witness gave; and
- A copy of any incident report.

16      31.    To date, Defendants have not given the Perdues any information.

17  Plaintiffs also requested that Defendant Torrance PD preserve David's vehicle and

18  the patrol car that crashed into him and allow Plaintiffs to inspect the vehicles.  To

19  date, Defendants have refused to give the Perdues any access to the vehicles.

20      32.    Plaintiffs also asked Defendants what actions they intended to take to

21  make sure that their community was not endangered like this in the future.  To date,

22  Defendants have not responded.

23  **David Perdue suffers severe injuries from the crash and shooting.**

24      33.    Before the shooting, David Perdue was a happy, healthy 38 year-old in

25  a stable marriage.  He was an avid surfer.  He was agile and athletic.  He was able

26  to think and speak clearly.  He could look after himself and his family.  David's job

27  as an airline baggage handler provided excellent benefits.

28

-9-

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

34.   As a result of the ramming and shooting, David is in constant pain.  He now moves slowly and unsteadily.  His speech is altered.  He has problems with his memory.  He has nightmares.  He is anxious and depressed.  Loud sounds bother him.  Since the shooting, David has been on medication for the frequent nightmares he has related to the shooting, for pain, and for his depression and anxiety.

**The City concludes that Defendant Officers' conduct was good police work and allows them to return to duty without any discipline.**

35.   Plaintiffs are informed believe that prior to their filing this complaint, Defendants City and Torrance PD completed their alleged "investigation." Plaintiffs are also informed and believe that, just as the Torrance City Attorney had informed them four days after the shooting, Defendants' "investigation" concluded that Defendant Officers' attempt to kill someone who they could not see or identify was "clearly . . . reasonable" and "appropriate."

36.   Plaintiffs are informed and believe that Defendant Officers have returned to duty and have not been subject to criminal prosecution or disciplinary action as a result of their conduct.

## FIRST CAUSE OF ACTION
### (Violation of 42 U.S.C. § 1983 (Excessive Force)
### – Against Defendant Officers)

37.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 36 of this Complaint as though set forth in full herein.

38.   On February 7, 2013, Defendant Officers suddenly and without warning rammed their patrol car broadside into David's vehicle, and then began shooting into the open driver's side window of David's vehicle.  At the time Defendant Officers crashed into and shot at him, David posed no threat to any officer, was not armed, was not attempting to flee, was not trying to interfere with

-10-

1   the officers, was not under arrest, and was not suspected of any involvement in

2   criminal activity.  Defendant Officers claim they were not able to see or identify

3   David before they began shooting and had no idea who they were shooting at.

4       39.     After shooting at him, Defendant Unknown Torrance Police Officer

5   No. 1 appeared at David's driver's side door, pointed her gun at David's head,

6   ordered him out of his vehicle, and forced him to lay face-down on the pavement,

7   even though it was clear that David was not the person they were looking for.

8       40.     In doing all of the wrongful acts alleged above, Defendant Officers

9   acted under color of law and deprived David of constitutionally protected rights

10  under the Fourth and Fourteenth Amendments to the United States Constitution.

11      41.     As a result of Defendant Officers' conduct, David has suffered loss of

12  liberty as well as significant physical and emotional harm.  Lizzette has suffered

13  loss of consortium.  Plaintiffs have suffered damages in an amount to be determined

14  according to proof at trial.

15      42.     In doing all of the wrongful acts set forth above, Defendant Officers

16  acted maliciously and in reckless and callous disregard of David's constitutional

17  rights.  Defendant Officers' acts were willful, oppressive, fraudulent and malicious,

18  thus warranting the award of exemplary and punitive damages against each of them,

19  in an amount adequate to punish the wrongdoers and deter future misconduct.

20

21              **SECOND CAUSE OF ACTION**

22      **(Violation of 42 U.S.C. § 1983 (Unlawful Seizure) –**

23      **Against Defendant Officers and DOES 1-10)**

24      43.     Plaintiffs reallege and incorporate by reference each and every

25  allegation contained in paragraphs 1 through 42 of this Complaint as though set

26  forth in full herein.

27      44.     In doing the acts set forth above, Defendant Officers acted under color

28  of law and deprived David of constitutionally protected rights, including the right to

-11-

1   be free from unreasonable searches and seizures, as guaranteed by the Fourth and

2   Fourteenth Amendments to the United States Constitution.

3       45.   As a result of Defendants' conduct, David has suffered loss of liberty

4   as well as significant physical and emotional harm.  Lizzette has suffered loss of

5   consortium.  Plaintiffs have suffered damages in an amount to be determined

6   according to proof at trial.

7       46.   Defendants' actions amounted to deliberate indifference to the rights

8   of David to be free of unreasonable search and seizure and arrest without probable

9   cause under the Fourth and Fourteenth Amendments to the United States

10  Constitution.

11      47.   In doing the wrongful acts set forth above, Defendants acted

12  maliciously and in reckless and callous disregard of David's constitutional rights.

13  Defendants' acts were willful, oppressive, fraudulent and malicious, thus

14  warranting the award of exemplary and punitive damages against each of them, in

15  an amount adequate to punish the wrongdoers and deter future misconduct.

16

17                        **THIRD CAUSE OF ACTION**

18            **(Violation of 42 U.S.C. § 1983 (*Monell* Liability) –**

19          **Against Defendant City and Defendant Torrance PD)**

20      48.   Plaintiffs reallege and incorporate by reference each and every

21  allegation contained in paragraphs 1 through 47 of this Complaint as though set

22  forth in full herein.

23      49.   Plaintiffs are informed and believed and on that basis allege that

24  Torrance PD Chief of Police John Neu is an official whose acts constitute final

25  official policy of Defendant City.

26      50.   After becoming aware of all of the wrongful acts alleged above –

27  including the use of excessive force and unlawful seizure, Neu, Defendants

28  Torrance PD and City failed to take any remedial action.

-12-

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

51.   After becoming aware of all of the wrongful acts alleged above, Neu, Torrance PD and City ratified those actions.

52.   In doing the acts set forth above, Defendant Officers were acting pursuant to official policies, procedures, practices or customs within Defendant City and Defendant Torrance PD, through its training of police officers and otherwise, pursuant to which Defendant City's police officers unlawfully seize individuals, use excessive force, and make false public statements, in order to shield its own officers from liability for unlawful practices.

53.   Defendant City's and Defendant Torrance PD's official policies, procedures, practices or customs, and their failure to properly train Defendant Officers amounted to a deliberate indifference to David's constitutionally protected rights, guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

54.   As a result of Defendants' conduct, David has suffered loss of liberty as well as significant physical and emotional harm.  Lizzette has suffered loss of consortium.  Plaintiffs have suffered damages in an amount to be determined according to proof at trial.

## FOURTH CAUSE OF ACTION

### (Assault and Battery – Against all Defendants)

55.   Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 54 of this Complaint as though set forth in full herein.

56.   On February 7, 2013, Defendant Officers suddenly and without warning rammed their patrol car broadside into David's vehicle, and then began shooting into the open driver's side window of David's vehicle.  At the time Defendant Officers crashed into and shot at him, David posed no threat to any officer, was not armed, was not attempting to flee, was not trying to interfere with

-13-

1  the officers, was not under arrest, and was not suspected of any involvement in
2  criminal activity.  Defendant Officers were not able to see or identify David before
3  they began shooting and had no idea who they were shooting at.
4      57.    As a result of Defendants' conduct, David has suffered loss of liberty
5  as well as significant physical and emotional harm.  Lizzette has suffered loss of
6  consortium.  Plaintiffs have suffered damages in an amount to be determined
7  according to proof at trial.
8      58.    In doing all of the wrongful acts set forth above, Defendant Officers
9  acted maliciously and in reckless and callous disregard of David's constitutional
10  rights.  Defendant Officers' acts were willful, oppressive, fraudulent and malicious,
11  thus warranting the award of exemplary and punitive damages against each of them,
12  in an amount adequate to punish the wrongdoers and deter future misconduct.
13
14              **FIFTH CAUSE OF ACTION**
15  **(Intentional Infliction of Emotional Distress – against Defendant Officers)**
16      59.    Plaintiffs reallege and incorporate by reference each and every
17  allegation contained in paragraphs 1 through 58 of this Complaint as though set
18  forth in full herein.
19      60.    By suddenly and without warning ramming their patrol car broadside
20  into David's vehicle, and then shooting at David's head through the open driver's
21  side window of David's vehicle when they claim they were not able to see or
22  identify David and had no idea who they were shooting at, at a time when David
23  posed no threat to any officer, was not armed, was not attempting to flee, was not
24  trying to interfere with the officers, was not under arrest, and was not suspected of
25  any involvement in criminal activity, Defendant Officers intended to cause, or
26  recklessly disregarded the probability of causing, mental anguish and emotional and
27  physical distress to David.
28

-14-

61.     As a proximate result of Defendant Officers' conduct, David suffered physical injuries, severe emotional distress and mental suffering, and he continues to suffer physical and emotional distress and mental suffering. Lizzette has suffered loss of consortium. Plaintiffs have suffered damages in an amount to be determined according to proof at trial.

62.     As a further direct and proximate result of Defendant Officers' conduct, David was, and will be, caused to retain the services of medical professionals and to incur reasonable expenses for the care and treatment of his injuries sustained, in an to be proven at trial.

63.     The foregoing wrongful acts were willful, oppressive, fraudulent, and malicious, thus warranting the award of exemplary and punitive damages against each defendant, except for governmental entity defendants, in an amount adequate to punish the wrongdoers and deter future misconduct.

## SIXTH CAUSE OF ACTION

### (Negligence – against all Defendants)

64.     Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 63 of this Complaint as though set forth in full herein.

65.     At all times, Defendants owed a duty of care to David Perdue.

66.     In doing all of the things alleged above, Defendants violated and breached their duty of care.

67.     As a proximate result of Defendants' acts and omissions, David has suffered physical and mental injuries, emotional distress and mental suffering. Lizzette has suffered loss of consortium.

68.     As a proximate result of the Defendants' actions, Plaintiffs have suffered damages in an amount to be determined according to proof at trial.

-15-

WHEREFORE, Plaintiffs pray for judgment as follows:

FOR THE FIRST AND SECOND CAUSES OF ACTION:

1.  For general damages, according to proof at trial;

2.  For punitive damages against Defendant Officers;

3.  For attorneys fees pursuant to 42 U.S.C. § 1988;

4.  For costs of suit incurred herein; and

5.  For such other and further relief as the Court may deem just and proper.


FOR THE THIRD CAUSE OF ACTION:

1.  For general damages, according to proof at trial;

2.  For attorneys fees pursuant to 42 U.S.C. § 1988;

3.  For costs of suit incurred herein; and

4.  For such other and further relief as the Court may deem just and proper.


FOR THE FOURTH AND FIFTH CAUSES OF ACTION:

1.  For general damages, according to proof at trial;

2.  For punitive damages against Defendant Officers;

3.  For costs of suit incurred herein; and

4.  For such other and further relief as the Court may deem just and proper.

-16-

FOR THE SIXTH CAUSE OF ACTION:

    1.     For general damages, according to proof at trial;

    2.     For costs of suit incurred herein; and

    3.     For such other and further relief as the Court may deem just and proper.


DATED:  June 17, 2013        TODD D. THIBODO
                                ANKUR TARNEJA
                                LAW OFFICES OF TODD D. THIBODO
                                A PROFESSIONAL CORPORATION


By: _____
              TODD D. THIBODO

Attorneys for Plaintiffs DAVID PERDUE and LIZZETTE PERDUE

-17-

COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; DEMAND FOR JURY TRIAL

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs hereby demand a jury trial, pursuant to Federal Rule of Civil

3  Procedure 38 and Local Rule 38-1.

4

5  DATED:  June 17, 2013          TODD D. THIBODO
                                    ANKUR TARNEJA
6                                   LAW OFFICES OF TODD D. THIBODO
                                    A PROFESSIONAL CORPORATION
7

8                                   By:_____
9                                        TODD D. THIBODO

10                                  Attorneys for Plaintiffs DAVID PERDUE and
                                    LIZZETTE PERDUE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-18-

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

DAVID PERDUE and LIZZETTE PERDUE

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

CITY OF TORRANCE; TORRANCE POLICE DEPARTMENT; UNKNOWN TORRANCE POLICE OFFICER NO. 1; UNKNOWN TORRANCE POLICE OFFICER NO. 2; and DOES 1 THROUGH 10

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Todd D. Thibodo (SBN 171655) & Ankur Tarneja (SBN 262593)
Law Offices of Todd D. Thibodo, A Professional Corporation
16133 Ventura Boulevard, Suite 580, Encino, California 91436

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT:** $ Compensatory and Puni

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Civil Rights pursuant to 42 U.S.C. § 1983

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☒ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY:   Case Number:   CV13- 4351

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

☒ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _____  DATE: June 17, 2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |